In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00127-CV


______________________________




JUAN ESCOBEDO, Appellant



V.



TEXAS WORKERS' COMPENSATION COMMISSION AND


ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellees



 


On Appeal from the 405th Judicial District Court


Galveston County, Texas


Trial Court No. 99CV1181




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Juan Escobedo appeals the trial court's judgment granting a summary judgment to St. Paul
Fire & Marine Insurance Company (St. Paul). 

 Escobedo commenced this case in the district court by the filing of a pro se original petition,
seeking to set aside a determination of the Texas Workers' Compensation Commission (TWCC). Escobedo was injured at his place of employment in 1992; St. Paul was the workers'
compensation carrier for his employer. In 1994 Escobedo, at that time represented by counsel,
entered into a benefit review conference agreement, which limited his compensable injury to his right
ankle only. After a contested case hearing, the hearing officer determined that Escobedo injured his
ankle as a result of a workplace accident and upheld the Benefits Review Conference Agreement,
limiting the extent of his compensable injuries. This finding was upheld by the appeals panel. 
Escobedo was given an impairment rating of five percent, pertaining to injuries to his right ankle
only. His petition challenged this rating. (1) 

 The appeals panel decision was shown by the record as filed October 28, 1999. Escobedo's
petition challenging the decision was filed December 7, 1999. The TWCC was served on June 15,
2000. St. Paul was served June 16, 2000. After answering, St. Paul propounded discovery to
Escobedo on November 15, 2000. 

 Although Escobedo did not respond directly to the discovery requests, he did communicate
with counsel for St. Paul, through a translator, that he would be unable to respond to the discovery
because he could not communicate in the English language.

 On April 16, 2001, St. Paul filed its Motion for Summary Judgment and No Evidence Motion
for Summary Judgment. The motion alleges St. Paul is entitled to judgment as a matter of law
because Escobedo had produced no evidence that his five percent impairment rating was not correct. 
Further, St. Paul alleged Escobedo's claim is barred by the statute of limitations because the petition
was not filed and served within forty days, as required by the applicable statute. It notes that the
citation for service of the original petition was not requested and issued until more than seven
months after the petition was filed.

 Escobedo filed no written response and produced no summary judgment evidence in response
to the no-evidence summary judgment motion that would support his contention that the rating set
by the TWCC was erroneous. At the hearing held on the motion, Escobedo's translator was present
and explained to the trial court that Escobedo could not respond because of the language barrier. On
June 27, 2001, without stating its reasons, the trial court granted St. Paul's Motion for Summary
Judgment and No Evidence Motion for Summary Judgment. 

 Escobedo contends the trial court erred in granting St. Paul's motion. Rule 166a(i) provides
that a no-evidence motion for summary judgment may be filed by the party without the burden of
proof, after adequate time for discovery, and without presenting evidence, on the ground that there
is no evidence to support an essential element of the nonmovant's claim or defense. In the case of
the filing of such a motion, the burden is shifted to the nonmovant to produce summary judgment
proof raising a genuine issue of material fact. The trial court must grant the motion unless the
nonmovant produces summary judgment evidence raising such an issue. Tex. R. Civ. P. 166a(i);
Saenz v. S. Union Gas Co., 999 S.W.2d 490, 493 (Tex. App.-El Paso 1999, pet. denied). Escobedo
argues that his pro se status and lack of understanding of the English language, should excuse his
failure to produce summary judgment evidence in response as required by the rule. However, we
have consistently held that a pro se litigant is held to the same standards applicable to a licensed
attorney and that a pro se litigant must comply with all procedural rules. Weaver v. E-Z Mart Stores,
Inc., 942 S.W.2d 167, 169 (Tex. App.-Texarkana 1997, no pet.). This point is overruled and is
dispositive of the case.

 The judgment of the trial court is affirmed. 



 



 Ben Z. Grant

 Justice


Date Submitted: May 30, 2002

Date Decided: June 5, 2002


Do Not Publish
1. For an explanation and legislative history of the statutory proceedings pertaining to workers'
compensation, see Tex. Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 512-16 (Tex. 1995). 



Id. First, if the evidence supporting the verdict, considered alone, is too weak
to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, if when we weigh the evidence supporting and contravening the conviction
we conclude the contrary evidence is strong enough that the State could not have met its burden of
proof, we must find the evidence insufficient. Id. "Stated another way, evidence supporting guilt
can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually insufficient, then we must reverse the judgment and
remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
            Admittedly, all the State's evidence against Slaughter was circumstantial in nature. In a
circumstantial evidence case, each fact or piece of evidence need not point directly to the defendant's
guilt; rather, the cumulative effect of all the incriminating facts may be sufficient to support the
conviction. Hooker v. State, 621 S.W.2d 597, 601 (Tex. Crim. App. 1980) (op. on reh'g). 
Circumstantial evidence is no less trustworthy or probative than direct evidence. See Geesa v. State,
820 S.W.2d 154, 158–59 (Tex. Crim. App. 1991), overruled in part, Paulson v. State, 28 S.W.3d
570 (Tex. Crim. App. 2000) (same standard of review applies to direct as well as circumstantial
evidence cases). "Circumstantial evidence alone may suffice . . . if the inferences arising therefrom
prove the fact in question beyond a reasonable doubt." Hankins v. State, 646 S.W.2d 191, 199 (Tex.
Crim. App. 1981). Mere presence of the accused at the scene of an offense is insufficient to support
a conviction. Pickering v. State, 596 S.W.2d 124, 129 (Tex. Crim. App. 1980). But an accused's
presence at the scene is a circumstance that tends to prove guilt and, when combined with other facts,
may indeed show the accused to be guilty of the crime. Wright v. State, 603 S.W.2d 838, 840–41
(Tex. Crim. App. 1979) (op. on reh'g). The factfinder is the exclusive judge of each witness'
credibility and the weight to be given each witness' testimony. Whitaker v. State, 977 S.W.2d 595,
598 (Tex. Crim. App. 1998).
            At the time police were alerted to the pawn shop burglary, Officer Chris Taylor was on his
way home from working an off-duty security job. Taylor, driving his personal pickup truck, heard
the police radio call and went to the scene to see if he could be of assistance. Seeing several officers
already present at the scene, he turned to go home. As he was leaving, he saw a black male emerge
from a wooded area and get in the passenger's side of a waiting white car. Thinking the person
matched the radioed description of one of the burglary suspects who had fled on foot, Taylor
followed the white car. Taylor was able to listen to the ongoing investigation on his police radio but
could not radio in, due to failing battery power. He called the police dispatcher on his cell phone and
advised he was following someone he thought was involved. Despite the darkness of the early hour,
the white car's lights were off. Eventually, marked Longview police vehicles joined in a low-speed
pursuit of the white car. The chase ended when the white car struck a parked vehicle in a residential
area and came to rest partly in a driveway, partly in a yard. Two men ran from the white car, but
Taylor could not catch them. A police dog was brought to the scene, and, from the scent on a T-shirt
found near where the suspects abandoned the white car, the dog led officers to the playhouse where
Slaughter was hiding. 
            The evidence supporting the conviction included a break-in at a storage unit connected to a
pawn shop, Slaughter's half-brother pawning items at that pawn shop, some of the items pawned by
Slaughter's half-brother being stacked outside the pawn shop during the burglary, Slaughter's half-brother being arrested at the scene of the burglary, and Slaughter's other half-brother mysteriously
arriving at the scene of the wrecked and abandoned white car shortly after Slaughter and the driver
fled the scene of the accident. Officer Taylor heard over the radio that one of the suspects was seen
fleeing the burglary scene on foot, wearing a white shirt. Taylor, near the burglary scene, saw a
black male wearing a white T-shirt emerge from the woods and get into a white car, which was
driven through the early morning darkness without lights for a period of time. When that car was
in an accident, the driver and passenger fled the scene. Taylor identified one of the fleeing subjects
as the one he had seen emerge from the wooded area near the burglary scene. Slaughter was found
several houses away from the wrecked car, hiding in a children's playhouse and sweating as if he had
been running. He offered at least some resistance to the officers arresting him.
            "While flight itself does not amount to a presumption of guilt, it is a circumstance from
which an inference of guilt may be drawn." Arivette v. State, 513 S.W.2d 857, 862 (Tex. Crim. App.
1974).
 
 
 
 
 
            We find the evidence sufficient to support the jury's verdict. We overrule Slaughter's point
of error and affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          May 18, 2005
Date Decided:             June 24, 2005

Do Not Publish